## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JOSE ANTONIO HEREDIA,

       Petitioner,

v.                                  CASE NO:  8:11-CV-211-T-30TBM

SECRETARY, DEPARTMENT OF
CORRECTIONS and ATTORNEY
GENERAL, STATE OF FLORIDA,

       Respondents.
_____/

## ORDER

       Petitioner, Jose Antonio Heredia, an inmate in the Florida penal system proceeding *pro se*, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. #1). The Court has considered the petition, Respondent's response (Dkt. #7) and Heredia's reply (Dkt. #13).  Upon review of the arguments of the parties and the record, the Court concludes that the petition should be denied.

## BACKGROUND

       Heredia was convicted by a jury for sexual battery of Shelley James.  James testified that she went to Heredia's house one evening in June 2006 to smoke crack and drink beer with Heredia, whom she considered a friend.

After smoking the crack, which James brought with her, and drinking some beer, James got up and went to the bathroom.  When she returned, she noticed her beer "tasted funny."  Heredia repeatedly asked her for sex and she repeatedly said no.

James testified that when she tried to leave, Heredia grabbed her by the arm, dragged her into the bedroom, threw her on the bed, and removed her shorts.  She did not remember anything after that until about three hours later when she woke up on the couch, completely naked, and saw Heredia standing over her, trying to put his penis into her mouth; she then bit him.  Around that time, two girls knocked on the door and Heredia threw James' clothes at her  and told her to get dressed.

James dressed and left Heredia's house.  Her mother took her to the hospital where she was swabbed for evidence.  The sample from her vagina showed DNA from at least two people, one of which was her own DNA.  Heredia could not be excluded as the other contributor.  The swab of her perineum tested positive for Heredia's DNA.

Heredia's defense was consensual sex.  His testimony was that James and he had consensual sex on a fairly regular basis for over a year prior to the incident in question.  James denied having sex with Heredia either before or after this incident.

Having exhausted all of his state appeals and post-conviction motions, Heredia now timely brings this petition for writ of habeas corpus relief raising one ground:

> Petitioner was denied his constitutional right to effective counsel where trial counsel failed to object or move for a mistrial when the alleged victim testified about an uncharged crime allegedly committed by the Petitioner.

Petition (Dkt. #1), p. 5.

The "uncharged crime" Heredia references was James' testimony that her beer was spiked causing her to black out. The post-conviction court denied this claim on *Strickland's*[1] prejudice prong.

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), effective as of April 24, 1996, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a). The Supreme Court has cautioned that § 2254 does not make federal courts "forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887, 103 S. Ct. 3383, 77 L.Ed.2d 1090 (1983).

Where a state court initially considers the issues raised in the petition and enters a decision on the merits, Section 2254(d) governs the review of those claims. *See Penry v. Johnson*, 532 U.S. 782, 792, 121 S. Ct. 1910, 150 L.Ed.2d 9 (2001). A federal court may grant a § 2254 petition only if (1) the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) the state decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

---

[1] *Strickland v. Washington*, 466 U.S. 668 (1984).

28 U.S.C. § 2254(d). *See Price v. Vincent,* 538 U.S. 634, 638, 123 S. Ct. 1848, 155 L.Ed.2d 877 (2003); *Maharaj v. Sec'y for the Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).

The Eleventh Circuit Court of Appeals discussed the meaning of the "contrary to" and "unreasonable application" clauses in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

Section 2254 establishes a highly deferential standard for reviewing state court judgments. *Parker v. Sec'y for the Dep't of Corr.*, 331 F.3d 764, 768 (11th Cir. 2003). If a federal court concludes that a state court applied federal law incorrectly, it may grant habeas relief only if that application was "objectively unreasonable." *Id. See also Yarborough v. Gentry*, 540 U.S. 1, 124 S. Ct. 1, 4, 157 L.Ed.2d 1 (2003). Moreover, under Section 2254(e)(1), a state court's factual findings shall be presumed correct, and the habeas petitioner can rebut the presumption of correctness only by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.  First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning

as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052; *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.  *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690.

Petitioner must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To meet this burden, Petitioner must show "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

## **DISCUSSION**

**Ground One:**        Petitioner was denied his constitutional right to effective counsel where
                trial counsel failed to object or move for a mistrial when the alleged
                victim testified about an uncharged crime allegedly committed by the
                Petitioner.

Heredia claims that his counsel was ineffective for failing to object and move for a

mistrial when James mentioned that her beer had been spiked.  In support, he states:

> During opening statements the prosecutor stated that the victim could not
> recall everything that happened because her beer was drugged. (Tr. 89).

> The victim then testified extensively about the fact that her beer had been
> spiked by the Petitioner before the sexual battery. (Tr. 103, 117, 119, 120,
> 121, 122, 123, 124).

> Finally, during closing argument, the state said that the victim blacked out
> because of something she ingested. (Tr. 278).

> Administering a drug to a victim of sexual battery which mentally or
> physically incapacitates the victim is a much more serious offense than that
> with which Petitioner was charged: Fla. Stat. § 794.011(4)(d) (2006), a first-
> degree felony.

Petition (Dkt. #1), pp. 5-6.

The state's opening and closing arguments are not in the record, but apparently the

prosecutor referred to James' testimony.  The trial testimony to which Heredia contends his

counsel should have objected and moved for mistrial related, almost entirely, to James'

responses to defense counsel's questions on cross.  For example, on direct, James made only

one brief reference to her beer "tasting funny:"

Q.    Now, when you were sitting at his kitchen table and he asked you for sex, you said - - did you say that he had asked you more than once?

A.    Yes, he did.

Q.    And what did you say each time?

A.    No.

Q.    Was this - - what happened at that time?  After you said no, what happened?

A.    Then I got up to go to the bathroom and I come back out and my beer started tasting funny.

Q.    Do you know what it taste like or it didn't taste right?

A.    It didn't taste right.

Q.    And what happened after that?

A.    And he asked me again and I said no.

Q.    And what happened after you said no again?

A.    Then I got up to leave and he would not let me leave.  He grabbed me by my left arm and dragged me into his bedroom.

Respondent's Ex. 14, p. 103.

James then made multiple references to her beer being spiked in response to defense counsel's questions on cross.  Because the defense was that the sex was consensual, it appears that defense counsel attempted to convince the jury that James had oral sex with Heredia before the incident in question.  In her interview with the police, James stated that she had performed oral sex on Heredia before the incident in question - - a point defense counsel attempted to emphasize to the jury:

Q.     It was morning still when you left?

A.     Yes, it was morning time.

Q.     Okay.

A.     Because they had took me to the emergency room.  But, see, when I was there at 7:00, I was smoking crack, then I started drinking the beer and it started tasting funny and then I blacked out after that.  I don't remember nothing in between that time because the beer that I was drinking tasted funny.

Q.     You said that.

       Did you ever indicate to him that you wanted to stay?

A.     No.  It was about 10:00 and I wanted to go home and he grabbed me by the arm and dragged me into the bedroom and I kept telling him no.

Q.     Okay.  But that's like three hours after you got there, right?

A.     It was only 7:00 when I got there.

Q.     I know.  But 10:00 would be three hours later?

A.     Yes.  I wanted to get up and leave and he wouldn't let me leave, dragged me into the bedroom.

Q.     So what happened in that three-hour period?

A.     I don't remember because of the beer tasted funny.

Q.     Well, was there more beer or more crack during that three-hour period?

A.     No.

Q.     Or what were you doing during that three hours?

A.     No, there was no more crack.  There was no more crack.  It was already smoked up.  It was a quart beer.  It was one of them quart bottle beers.

Q.     Okay.  You said there were two, right?

A.     Yeah.  One for me, one for me.

Q.     So you picked up the beer?

A.     Yes.

Q.     Okay.

A.     And I started - - no, I didn't pick up the beer.  The beer was already at
       his house.

Q.     No, I don't mean buy it.  I mean when you went to drink the beer you
       picked it up, picked up the bottled.

A.     Yes.  Picked it up and it tasted funny.

       MR. BOLDT:        Judge, if I can have just a moment with my client.
                         Thank you.

       THE COURT:        Okay.

Q.     I would like to give you a chance to clear something up if you could for
       me, Ms. James.  You indicated you didn't have any kind of sexual
       contact with Tony at all before this evening, whenever it was in June,
       right?

A.     No, right.

Q.     Nothing?  I mean no kind of oral sex, nothing like that at all?

A.     No.

Q.     Do you remember giving a statement to law enforcement?  Do you
       remember talking to them on tape?

A.     I remember talking to them on tape, but I was so incoherent I didn't
       know what I was doing, didn't know what I was saying because I was
       still coming down from the, from the - - I was still coming off the,
       whatever he put in my beer.

Q.      Well - - okay.  Obviously you didn't see anything get put in that beer, did you?

A.      No, I didn't.

Q.      But we know that you were smoking crack and we know that you were drinking the beer?

A.      Yeah, and the beer tasted funny.

Q.      I understand.  And when you talked to law enforcement, were you telling them the truth?

A.      Yes, I was.

Q.      Okay.  Did you tell them that you had oral sex with him before?

A.      I don't remember.

Q.      Okay.  Would it be - - would you be surprised to hear that you told them that you had, using your words, given him blow jobs before?

A.      I don't recall.

Q.      Okay.  So that would surprise you to hear - -

A.      Yeah.

Q.      - - that you told the cops that?

A.      Yes.

Q.      Now, would that be the truth or would it not be?  Let me rephrase that.  When you told the cops you had given him blow jobs before, was that true or not?

A.      I don't recall.

Q.      No.  You are misunderstanding my question.  When you told the police that you gave him blow jobs before, had you done that before?

A.    No.

Q.    Okay.  So when you told the police that, it wasn't true?

A.    Right.

Respondent's Ex. 14, pp. 119-23.

Heredia argues that James' testimony served no purpose in the trial, other than to prove his bad character.  He also argues that the unfair prejudice resulting from the testimony substantially outweighed the probative value and would have been excluded had his counsel objected.

Heredia's complaint that his counsel should have objected to this "bad character" evidence is, under federal law, governed by Federal Rule of Criminal Evidence 404(b) which provides:

> **(b)  Other Crimes, Wrongs, of Acts.** -- Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

28 U.S.C. § 404(b).

Heredia is incorrect about the application of Rule 404(b) to the evidence in his case.  Rule 404(b) applies to wrongful acts unconnected with the charged crime.  If the wrongful acts arise out of the same transaction or series of transactions as the charged offense, it is "intrinsic" to the offense and is admissible.

The Eleventh Circuit explained this distinction in *United States v. Leichtman*, 742 F. 2d 598 (11th Cir. 1984).  In *Leichtman*, the defendants were charged with kidnapping and conspiracy; they sold on consignment to Bayles, a drug dealer, 5000 pounds of marijuana for $1,000,000.  Bayles took the marijuana to Illinois where he sold 500 pounds on consignment and stored the remaining 4,500 pounds in a farmhouse.  The marijuana at the farmhouse was stolen.   The defendants kidnapped Bayles and beat him to determine what really happened to the marijuana.  The defendants claimed the trial court committed error in the kidnapping trial when it admitted evidence concerning the earlier marijuana transaction.  The Eleventh Circuit disagreed:

> The defendants contend that the admission of evidence concerning the marijuana aspects of the case was an abuse of discretion because it concerned an extrinsic criminal offense that was inadmissible under both Fed. R .Evid. 403 and 404(b).  They suggest that the trial court could simply have instructed the jury at the start of the trial that Bayles was indebted to Leichtman and Villazon for the sum of $1 million and thereby avoided prejudicing their trial defense.
>
> The marijuana evidence was not evidence of an extrinsic offense.  As we have previously indicated, "evidence of an uncharged offense arising out of the same transaction or series of transactions as the charged offense is not an 'extrinsic' offense within the meaning of Rule 404(b)."  *U.S. v. Kloock*, 652 F. 2d 492, 494 (5th Cir. 1981) (Unit B); *see U.S. v. Killian*, 639 F. 2d 206, 211 (5th Cir.), *cert. denied*, 451 U.S. 1021, 101 S. Ct. 3014, 69 L. Ed. 2d 394 (1981); *U. S. V. Aleman*, 592 F. 2d 881, 885 (5th Cir. 1979); *see also U.S. v. McCrary*, 699 F. 2d 1308, 1311 (11th Cir. 1983) ("other crime" evidence admissible if "inextricably intertwined with the evidence used to prove the crime charged"). Evidence of the original marijuana transaction was necessary to complete the story of the kidnaping.  It explained the motive of the defendants; it put the trip from Miami to Springfield in context; it evidenced the pre-existing debt and thereby corroborated the victims' story that their ransom was $1 million in drugs or money.

*Id*. at 603-4 (footnote omitted).

Here, James' testimony about her beer being spiked was "intrinsic" to the charged offense.  That is, it was part of the same transaction, a series of events leading to a sexual assault.  And, even if James' testimony was considered "extrinsic," it still would have been admissible because it showed intent or plan, exceptions to Rule 404(b).  Of course, this testimony would be subject to the balancing required under Rule 403, but, under that test, its probative value would clearly outweigh any prejudicial impact to Heredia.  *See United States v. Crawford*, 413 F. 3d 873 (8th Cir. 2005).

In sum, because James' testimony about her beer "tasting funny" was intrinsic to the crime charged, her testimony was admissible under federal law.  Had Heredia's counsel objected to the testimony and moved for mistrial, it would have been denied.  Therefore, his performance was not deficient and Heredia was not prejudiced.  And the state post-conviction court did not unreasonably apply federal law in denying this claim on Heredia's post-conviction motion.

It is therefore ORDERED AND ADJUDGED that:

1.     The petition for writ of habeas corpus (Dkt. #1) is DENIED.

2.     The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE** and **ORDERED** in Tampa, Florida on April 9, 2012.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies Furnished To**:
Counsel/Parties of Record

*F:\Docs\2011\11-cv-211.deny 2254 Heredia.wpd*

Page 14 of 14